UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
DONNELL PERKINS,

                  Plaintiff,

                v.

THE CITY OF NEW YORK, ANTHONY
PITRE, BRIAN McNULTY, and ROBERT
SALEM, in their individual and official
capacities,

                  Defendants.

------------------------------------------------------------- X

**ORDER**

24-CV-6366 (AMD)(SDE)

**SETH D. EICHENHOLTZ**, United States Magistrate Judge:

      Plaintiff Donnell Perkins brings claims under 42 U.S.C. §§ 1983 and 1988 against Defendants the City of New York, and former New York City Police Department ("NYPD") Detectives Anthony Pitre, Brian McNulty, and Robert Salem, alleging violations of Plaintiff's constitutional rights in connection with the 1999 criminal investigation, prosecution and conviction of him when he was 17 years old. Plaintiff's conviction was subsequently overturned in 2023, after he served approximately 22 years in prison. Familiarity with the underlying allegations, claims, and defenses is assumed.

      During discovery, Plaintiff noticed the deposition of Defendant Pitre to take place in person and in Florida, where Defendant Pitre now resides. Presently before the Court is Defendants' motion for a protective order, which, if granted, would limit Plaintiff to a videoconference deposition of Defendant Pitre. Defendants seek this protective order to avoid the costs related to Defendants' counsel's travel to Florida to defend the deposition in person. As detailed below, because counsel's travel costs are typical of expenses incurred in defending a case with a substantial amount in controversy, the Court finds that these costs do not, alone, justify denying

1

Plaintiff the deposition format of his choice. Thus, Defendants' motion for a protective order is denied.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 allows parties to seek through discovery any information that is relevant to any party's claim or defense and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Rule 26 also permits the district court to limit discovery if the burden or expense of production outweighs its potential benefits, including by issuing a protective order. *See id.* (b)(2) and (c). "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012).

Relatedly, Federal Rule of Civil Procedure 30 contemplates that depositions may be taken in person or by telephone or other remote means. *See* Fed. R. Civ. P. 30(b)(4). The latitude afforded to the Court in managing the discovery process extends to determining whether depositions should be in person or remote.[1] *See Rohan v. Simon Mgmt. Assocs., LLC*, 24-CV-4042, 2025 WL 1047739, at *1 (E.D.N.Y. Mar. 22, 2025). In exercising its discretion, the Court "must balance claims of prejudice and those of hardship . . . and conduct a careful weighing of the relevant facts." *Floodbreak LLC v. T. Moriarty & Son, Inc.*, 754 F. Supp. 3d 330, 331 (E.D.N.Y. 2024) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 337 F.R.D. 575, 578 (S.D.N.Y. 2020)).

The Court starts with the presumption that Plaintiff should be permitted the deposition format of his choice, which, in this case, is in-person in Florida. *See, e.g., Rohan*, 2025 WL 1047739, at *2 ("The party noticing the deposition is generally entitled to choose the deposition's

---

[1] This is distinct from practice in New York state court, where parties must consent to a remote deposition. *See* CPLR § 3113(d).

location[.]")  Indeed, "there is nothing 'extraordinary or inappropriate about seeking to take a deposition in person, particularly for a key witness.'"  *Kiss v. Kenny*, 22-CV-10663, 2025 WL 1532744, at *2 (S.D.N.Y. May 29, 2025) (quoting *United States v. M/Y Amadea*, 23-CV-9304, 2024 WL 4799887, at *5 (S.D.N.Y. Nov. 15, 2024)).

Nevertheless, the Court may still, in its discretion, order the deposition be conducted by remote means if a party articulates a burden associated with travel that outweighs the prejudice to the requesting party caused by the different deposition format.  *See, e.g., Est. of Gerasimenko v. Cape Wind Trading Co.*, 272 F.R.D. 385, 388–90 (S.D.N.Y. 2011).  In weighing these burdens, courts have observed that video depositions achieve the same ends as in person depositions, noting that "[t]he product of the deposition is the transcript and video footage, which will be unaffected whether the deposition is conducted remotely or in person." *Floodbreak*, 754 F. Supp 3d. at 333 (quoting *In re Terrorist Attacks*, 337 F.R.D. at 759).

Nevertheless, a party objecting to the noticed deposition format must establish that the noticed format imposes a meaningful burden on the objecting party.  *See Rohan*, 2025 WL 1047739, at *2.  To do so, "ordinarily the application must contain more than a conclusory statement for such relief." *Id. (comparing Stapleton v. Prince Carpentry, Inc.*, 22-CV-4044, 2023 WL 1785547, at *1 (E.D.N.Y. Feb. 6, 2023) (denying motion for remote deposition where, despite emphasizing concerns about contracting COVID, motion was "not supported by evidence of the necessity" to have deposition taken remotely) *with PC-41 DOE v. Poly Prep Country Day Sch.*, 20-CV-3628, 2022 WL 420619, at *1, *3 (E.D.N.Y. Jan. 20, 2022) (granting motion for remote deposition where motion "provided specific articulated facts about the [COVID] risks faced by [plaintiff] and his family from travel and in-person depositions")).  In other words, an application to compel a remote deposition must contain "some factual support and particularized basis that

3

would justify altering or modifying the noticing party's choice of deposition logistics." *Rohan*, 2025 WL 1047739, at *2.

## ANALYSIS

Defendant Pitre is a retired NYPD detective currently residing in Florida. Plaintiff seeks an in-person deposition of Defendant Pitre, whose testimony both sides agree is critical to resolving their respective claims and defenses. (*See* Motion for Protective Order ("Mot."), Dkt. No. 33.) Plaintiff noticed the deposition in Florida because that is where the Defendant currently resides. (*See id.* at 1.) The parties agree that Defendant Pitre's deposition testimony is important to resolving the parties' claims and defenses. Plaintiff seeks to obtain this testimony in person because, among other reasons, Plaintiff believes it will allow him to closely observe "the witness's demeanor and non-verbal body language." (*Id.* at 3.) Further, Plaintiff believes it is easier for counsel to "control the witness" and prevent evasive or non-responsive answers with counsel physically present, as opposed to on a video call. (*Id.*)

Defendants seek a protective order requiring Plaintiff to take this deposition by videoconference instead of in person. The primary reason Defendants proffer in support of their application is that "due to fiscal responsibilities, [Defendants' counsel's office] has not authorized" travel expenses required for Defendants' counsel to be present at a deposition if it was conducted entirely in Florida.[2] (*Id.* at 1.) Defendants argue that, as a result, without the protective order,

---

[2] Defendants also argue that it is less critical for Plaintiff to take the deposition in person because Plaintiff's counsel previously had the opportunity to question Defendant Pitre in person during the related but separate proceeding where Plaintiff successfully overturned his criminal conviction. (*See* Mot. at 2.) The issue before the Court is discovery in this litigation, where Plaintiff is entitled under Federal Rule of Civil Procedure 30 to depose the Defendant, presumably using the format of his choice. As such, the fact that Plaintiff's counsel may have previously questioned Defendant Pitre in a separate matter with different objectives does not weigh heavily against permitting the deposition in this case using Plaintiff's format of choice.

Defendants' counsel will have to attend the deposition remotely while Plaintiff's counsel is able to travel to Florida. Defendants emphasize that this will prejudice Defendant Pitre, because he will be forced to endure questioning by Plaintiff's counsel who is present, "while his own attorney attend[s] remotely from more than 1,000 miles away." (*Id.* at 1.)

It may be that Defendant Pitre would be best served by having counsel attend in person while being deposed in person. However, Defendants' counsel can in fact travel to Florida, albeit with additional expenses. Plaintiff concedes that conducting the deposition in person requires both Plaintiff and Defendants to incur travel costs associated with a deposition, ones which they could avoid with a videoconference deposition. As such, the Court focuses its analysis on the objective burden of those additional expenses required for counsel to attend the deposition in person. The parties agree that the costs associated with travel for Defendants' counsel will likely be under or around $1,000. Plaintiff argues that these costs, in context, are minimal, pointing out that it will likely be less than the cost of each transcript for each deposition Defendants intend to take in this matter. (*See id.* at 3.)

When evaluating these costs in context, the Court must consider the specific facts and scope of discovery in the case. This is a civil rights case seeking redress for what Plaintiff maintains was an unlawful conviction at 17 years old, resulting in a loss of more than 20 years of his liberty. (*See* Complaint ("Compl."), Dkt. No. 1.) Defendants, in turn, maintain that their investigation was proper and appropriate, and that there was no violation of Plaintiff's constitutional rights. (*See* Defendants' Answer, Dkt. No. 18.) The matters at issue are significant and consequential to the parties, and the potential monetary damages if Plaintiff's claims are proven could be substantial. *See* Fed. R. Civ. P. 26(a); (*see also* Compl. at 66 (seeking "compensatory damages for loss of liberty, past and future mental and emotional distress, and economic harm of not less than

5

$60,000,000[,] and punitive damages of not less than $20,000,000.").) Given this, litigation expenses of around $1,000 related to one deposition are typical when defending a case of this type. Those expenses are not, on their face, an undue burden on Defendants.

Critically, Defendants do not offer much on this question beyond their conclusory assertion that the litigation costs are unnecessary and burdensome. To give Defendants an opportunity to make a more robust showing, the Court held oral argument on this motion. (*See* Minute Entry dated June 30, 2026.) There, as in their letter, Defendants argued simply that a decision has already been made that approving counsel's travel to Florida is unnecessary—though how the decision was reached, on what basis, and by whom is unclear, even despite direct questioning by the Court at argument.

Considering that Plaintiff is presumptively entitled to depose Defendant Pitre using the method of his choice, that the deponent at issue is a critical one, and that this case involves significant facts and amounts in controversy, the Court concludes that Defendants' almost entirely conclusory allegation of burden does not constitute the kind of "evidence of necessity" required to compel a remote deposition over the deposing party's preference. *Stapelton,* 2023 WL 1785547, at *1.[3]

---

[3] Defendants also argue that the Court should consider the potential impact on other cases where the City of New York is a defendant, raising the concern that if they are forced to incur costs to attend a deposition in Florida in this case, opposing counsel in other cases may demand depositions in locations which require travel and exponentially increase the expenses incurred by the City. To be sure, the Court is mindful of the need to protect the public fisc from excessive litigation expense and has a deep respect for the City's obligation to do so. However, the Court does not consider these arguments because it must focus only on the facts presented in this case and not on speculative impact on other cases. *See supra* at 2.

The Court also finds this argument wanting for three other reasons. First, this issue only appears where witnesses or parties represented by the City live out-of-district. Second, even in those cases, the opposing party will also incur additional expense associated with an in-person deposition, along with the City. Third, and most critically, there are critical distinctions that could support a decision to compel a remote deposition in some of those cases. For example, there could

The relative burden of the costs at issue here is unlike the burdens articulated in *Floodbreak*, where the party to be deposed established with specificity that he was unable to afford travel, and that both he and his wife each had a recent cancer diagnosis that would impact his ability to travel; and *PC-41 DOE*, where, during the ongoing COVID-19 pandemic, the deponent would, among other things, risk exposure of a non-vaccine eligible child to COVID-19. *See Floodbreak*, 754 F. Supp. 3d at 333; *PC-41 Doe*, 2022 WL 420619, at *1. In contrast, the imposition of typical litigation costs related to one deposition is insufficient, in a case of this type, to compel Plaintiff to take the deposition of a party remotely.

## CONCLUSION

After balancing the prejudices and burdens on the parties specific to this case, the Court concludes that travel expenses related to one out-of-district deposition do not, alone, outweigh Plaintiff's interest in conducting a critical deposition via the method of his choice. Accordingly, Defendants' motion for a protective order is denied.

**SO ORDERED.**

Dated: Brooklyn, New York
July 1, 2026

/S/ *SETH D. EICHENHOLTZ*
SETH D. EICHENHOLTZ
United States Magistrate Judge
Eastern District of New York

---

be multiple out-of-district witnesses; the depositions at issue may involve a witness less central to the parties' claims and defenses; or the case could involve a substantially smaller amount in controversy.